IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE:     NORTH MEADOW APARTMENTS, LLC     CHAPTER 11
          Debtor     CASE NO. 09-12585-DWH

## PLAN OF REORGANIZATION

Unless otherwise defined, the capitalized terms contained in this Plan of Reorganization (the "Plan") shall have the same meanings as described in the Disclosure Statement. All capitalized terms used in the Plan not defined herein or in the Disclosure Statement, but which are defined in the Bankruptcy Code, shall have the respective meanings ascribed in the Bankruptcy Code. All capitalized terms used but not defined in the Plan, in the Disclosure Statement or in the Bankruptcy Code shall have the respective meanings ascribed in the Bankruptcy Rules.

### ARTICLE I

### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The Plan divides the Claims against and Interests in the Debtor into various Classes pursuant to Bankruptcy Code Section 1122. Set forth below is a description of the general Classes of Claims against and Interests in the Debtor and their treatment under the Plan. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent that the Claim or Interest qualifies within the description of that different Class.

     Class 1:     Administrative Claims

     Class 2:     Priority Claims

     Class 3:     Secured Claims of Regions Bank ("the Bank")

| | |
|---|---|
| Class 4: | Secured Claims of David Sanders |
| Class 5: | Alleged Secured Claims of Jordan Carpet & Flooring ("Jordan") |
| Class 6: | Alleged Secured Claims of New Home Building Stores ("New Home") |
| Class 7: | General, Unsecured Claims |
| Class 8: | Interests. |

## ARTICLE II

## TREATMENT OF CLAIMS AND INTERESTS

The Claims as classified in Article I shall be satisfied as follows:

**Class 1: Administrative Expense Claims.**

This Class consists of the administrative expenses and claims of professionals and of the United States Trustee under §503(b) of the Bankruptcy Code and all fees and charges assessed against the Debtor under Title 28 of the United States Code. The compensation of professionals, such as attorneys and accountants, is subject to approval by the Court. The timing of payment to such professionals for compensation for services rendered and reimbursement of expenses will be made as authorized and allowed by the Court. The Court will review all requests for compensation and reimbursement of expenses.

All Class 1 expenses and claims for fees will be paid as provided for in future Court Orders, or as may be agreed upon, except that fees due to the Office of the United States Trustee will be paid as and when due until this Case is closed, converted or dismissed.

**Class 2:**     **Priority Claims**

The priority/secured claims of the Lowndes County Tax Collector for 2008 and 2009 will be paid over 48 months in equal payments of principal and interest at the appropriate statutory rate.

**Class 3:**     **Secured Claim of the Bank**

The claims of the Bank will be amortized over a 30-year period, to be paid in equal monthly installments of principal and interest commencing on the Effective Date. The secured claims of the Bank will bear interest at the rate of 5.25% per annum. The Bank's claims are impaired.

**Class 4:**     **Secured Claims of David Sanders**

The secured claims of David Sanders, in the sum of $50,000.00 (secured by a second mortgage upon Debtor's assets), will be amortized over a five-year period, to be paid in equal monthly installments of principal and interest commencing on the Effective Date. The secured claims of David Sanders will bear interest at the rate of 5.25% per annum. David Sanders' claims are impaired.

**Class 5:**     **Alleged Secured Claims of Jordan**

Jordan asserts a materialman's lien against the Debtor's assets. To the extent it is allowed as a secured claim, it will be amortized over a 60-month period, payable monthly beginning on the Effective Date. Jordan's claims are impaired.

**Class 6:**     **Alleged Secured Claims of New Home**

New Home asserts a materialman's lien against the Debtor's assets. To the extent it is allowed as a secured claim, it will be amortized over a 60-month period, payable monthly beginning on the Effective Date. New Home's claims are impaired.

**Class 7:**     **General, Unsecured Claims**

Unsecured creditors will receive the Debtor's net cash flow for 36 months following confirmation of the Plan, payable semi-annually.

**Class 8:**     **Interests.**

All interests shall remain unaltered.

## ARTICLE III

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor has no executory contracts or unexpired leases to assume or reject, other than apartment leases which shall be assumed.

## ARTICLE IV

## MODIFICATION OF THE PLAN

The Debtor may amend or modify the Plan at any time prior to the entry of an Order Confirming the Plan without the approval of the Court. Subsequent to the entry of the Confirmation Order, the Debtor may modify the Plan before substantial consummation of the Plan with the approval of the Court.

## ARTICLE V

## WITHDRAWAL OF THE PLAN

The Debtor reserves the right to revoke and withdraw the Plan as the plan of reorganization for the Chapter 11 case, at any time prior to the Confirmation Date if conditions set forth in the Plan cannot be satisfied for any reason after the Confirmation Date, at any time up to the Effective Date. If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.

# ARTICLE VI

## RETENTION OF JURISDICTION

Subsequent to Confirmation of the Plan, the Court will retain jurisdiction to hear and determine all Claims against the Debtor and to hear and to enforce all causes of action which exist on behalf the Debtor, including, without limitation, all turnover and avoidance causes of action granted to the Debtor and that will be owned and possibly pursued by the Debtor, post-confirmation under the Bankruptcy Code. The Court will also retain jurisdiction to construe and apply the provisions of the Plan, including the administration and implementation of the Plan, to enter orders in aid of consummation of the Plan, to effectuate the abandonment of assets, if necessary, to issue any orders in connection with the Plan in these proceedings, to hear and decide applications for compensation and reimbursement of expenses, to resolve objections to Claims, adversary proceedings, and matters pending independently of the Plan and to close the Chapter 11 case.

# ARTICLE VII

## LIQUIDATION ANALYSIS & FEASIBILITY

A.     **Feasibility of the Plan**

The Debtor's Monthly Operating Reports provide current information on the Debtor's financial position and assets and liabilities. During the case, the Debtor has remained current on all of his post-petition obligations, including insurance. The Debtor believes that its monthly cash collections and other income is, and will be, sufficient to satisfy the Claims of Secured and Priority Creditors as proposed in the Plan.

B.  **Liquidation Analysis**

Section 1129 of the Bankruptcy Code provides that the Court may confirm the Plan only if certain requirements are met. One of these requirements is that each non-accepting Holder of an Allowed Claim must receive or retain under the Plan, on account of such Claim, property as of the Effective Date of the Plan at least equal to the value such Holder would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.

For the purposes of the following discussion, it is assumed that a Chapter 7 trustee would seek to maximize the value of the Debtor's estate by attempting to sell the assets of the Debtor. However, the Debtor believes that the circumstances surrounding liquidation under Chapter 7 would lead to selling conditions which would substantially detract from the total value returned to the Debtor's estate. Further, there is no assurance that a Chapter 7 trustee will sell the assets, which would cause a forced liquidation at even more depressed prices. The following are some, but not all, of the consequences the Debtor believes would result from Chapter 7 liquidation:

1. Substantial Chapter 7 administrative costs relating to professional fees, broker commissions, sales commissions and other associated expenses would occur.

2. The sale of the Debtor's assets under the time pressures and adverse publicity related to Chapter 7 liquidation would create a difficult, if not impossible, selling environment and would result in a transaction consummated as a substantial discount to fair market price.

3. Adverse tax consequences may further reduce the value returned to the estate from a sale of the Debtor's assets. An asset sale pursuant to Chapter 7 liquidation could potentially result in adverse federal income tax consequences to the estate.

4. A Chapter 7 trustee will be unfamiliar with the Debtor's assets at the time of his/her appointment and is not likely to be in a position to market the Debtor's assets during the liquidation period very effectively.

5. A Chapter 7 trustee may consider this Case a "no asset" case and provide no distribution to Unsecured Creditors.

6. The current real estate market will probably not produce a lender or purchaser that will provide a greater return to creditors than that promised by the Debtor.

C. **Plan Alternatives**

The Debtor has considered various alternatives to the Plan. For the reasons set forth herein, the Debtor believes that to maximize the potential value of the Debtor and maximize the return to creditors, the Plan is the most desirable and beneficial.

## ARTICLE VIII

## TAX CONSEQUENCES

A. **General**

Under the Internal Revenue Code of 1986, as amended (the "Tax Code") and regulations promulgated thereunder (the "Regulations"), there are certain significant federal income tax consequences associated with the Plan. Certain of these consequences are discussed below. The tax consequences described below are subject to significant uncertainties because of (i) the complexity of the transactions contemplated by the Plan; (ii) the uncertainty as to the tax consequences of events in prior years, including changes made by the Bankruptcy Tax Act of 1980 ("BTA80"), the Tax Reform Act of 1985 ("TRA85"), the Tax Reform Act of 1986 ("TRA86"), the Omnibus Reconciliation Act of 1987 ("ORA87"), the Technical and

Miscellaneous Revenue Act of 1988 ("TAMRA"), the Omnibus Budget Reconciliation Act of 1989 ("ORA89"), the Revenue Reconciliation Act of 1990 ("RRA90") and the Revenue Reconciliation Act of 1993 ("RRA93"); (iii) the differences in the nature of the Claims of various Claimants, their taxpayer status, residence and methods of accounting (including Claimants within the same Class), (iv) prior actions taken by Claimants with respect to their Claims; and (v) the possibility that events or legislation subsequent to the date hereof could change the federal tax consequences of the transactions. There may also be state, local or foreign tax issues that may affect particular Claimants.

HOLDERS OF CLAIMS AND INTERESTS ARE URGED TO CONSULT THEIR TAX ADVISORS RESPECTING THE INDIVIDUAL TAX CONSEQUENCES OF THE TRANSACTIONS CONTEMPLATED UNDER OR IN CONNECTION WITH THE PLAN, INCLUDING STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.

**B.    Tax Consequences to Claimants**

The tax consequences of the implementation of the Plan to a Claimant will depend in part on (i) whether the Claimant's Claim constitutes a security for federal income tax purposes, (ii) whether the Claimant reports income on the accrual basis, (iii) whether the Claimant receives consideration in more than one tax year, (iv) whether the Claimant is a resident of the United States, and (v) whether all the consideration received by the Claimant is deemed to be received by that Claimant as part of an integrated transaction. The federal tax consequences upon the receipt of Cash and notes allocable to interest are discussed below.

## C. Gain or Loss on Exchange

The Debtor does not believe that any of the creditors' Claims will constitute tax securities. Whether a debt instrument constitutes a security is based on the facts and circumstances surrounding the origin and nature of the debt and its maturity date. Generally, claims arising out of the extension of trade credit have been held not to be securities. Instruments with a five-year term or less also rarely constitute securities. Accordingly, a Claimant will recognize gain or loss on the exchange of his existing Claim (other than a Claim for accrued interest) for any consideration. The amount of such gain or loss will equal the difference between (i) the "amount realized" in respect of such Claim and (ii) the adjusted tax basis of the Claimant in such Claim. Pursuant to Section 1001 of the Tax Code, the "amount realized" will be equal to the sum of the Cash plus the fair market value of any other property received in such exchange.

1. **Receipt of Cash.** A Claimant who receives cash in full satisfaction of his Claim will be required to recognize gain or loss on the exchange. The Claimant will recognize gain or less equal to the difference between the "amount realized" in respect of such Claim and the adjusted tax basis of the Claimant in the Claim, and the tax treatment of the exchange will parallel the tax treatment set forth under above.

2. **Determination of Character of Gain or Loss.** In the case of a Claimant whose existing Claim does not constitute a capital asset, the gain or loss realized on the exchange will give rise to ordinary income or loss. In the case of a Claimant whose existing Claim constitutes a capital asset in his hands, the gain or loss

required to be recognized will generally be classified as a capital gain or loss, except to the extent of interest. Any capital gain or loss recognized by a Claimant will be long-term capital gain or loss with respect to those Claims for which the holding period of the Claimant is more than twelve (12) months, and short-term capital gain or loss with respect to such Claims for which the holding period of the Claimant is twelve (12) months or less.

3. **Receipt of Interest.** The BTA80 reversed prior law by providing that consideration attributable to accrued but unpaid interest will be treated as ordinary income, regardless of whether the Claimant's existing claims are capital assets in his hands and the exchange is pursuant to a tax reorganization. A Claimant who, under his accounting method, was not previously required to include in income accrued but unpaid interest attributable to his existing Claims, and who exchanges his interest Claim for cash, other property or Stock, or a combination thereof, pursuant to the Plan will be treated as receiving ordinary interest income to the extent of any consideration so received allocable to such interest, regardless of whether that Claimant realizes an overall gain or loss as a result of the exchange of his existing Claims.

**D.    Backup Withholding**

Under the Tax Code, interest, dividends and other "reportable payments" may, under certain circumstances, be subject to "backup withholding" at a thirty-one percent (31%) rate. Withholding generally applies if the holder: (i) fails to furnish his social security number or other taxpayer identification number ("TIN"), (ii) furnishes an incorrect TIN, (iii) fails to report

interest or dividends, or (iv) under certain circumstances fails to provide a certified statement, signed under penalty of perjury, that the TIN provided is his correct number and that he is not subject to backup withholding.

**BECAUSE THE FINAL OUTCOME DEPENDS SO MUCH ON EACH INDIVIDUAL CLAIMANT'S SITUATION, IT IS IMPERATIVE THAT EACH CLAIMANT SEEK INDIVIDUAL TAX COUNSEL FOR ADVICE ON HIS PARTICULAR SITUATION.**

## ARTICLE IX

## SOLICITATION OF ACCEPTANCES FOR THE PLAN

Although this Disclosure Statement provides information regarding the assets, liabilities and the general financial posture of the Debtor and the potential benefits that might accrue to Holders of Claims and Interests in the Debtor upon Confirmation of the Plan, the Disclosure Statement neither guarantees nor purports to represent the amount or percentage of each Allowed Claim that would be realized under the Plan. Despite this uncertainty, which is inherent in any Plan, the Debtor believes that the Plan will provide each Holder of a Claim with an opportunity to receive greater benefits than any other alternative.

As explained more fully herein above, before the Plan may be confirmed by the Court, the Court must find that the criteria set forth in the Bankruptcy Code have been met, including the requirement that the Plan must be accepted by an impaired Class.

## ARTICLE X

## MEANS FOR EXECUTION OF THE PLAN

The Debtor will fund the Plan from rental income received.

## ARTICLE XI

## RATIFICATION OF THE PLAN

Alterations or modifications of the Plan may be approved by the Court without notice to Creditors if the Court finds that such alterations or modifications do not materially or adversely affect the interests of the Creditors. If any alterations or modifications of the Plan are proposed which Court finds to materially or adversely effect the interest of Creditors, notice and description of such alteration of modification shall be given to all Creditors adversely affected.

## ARTICLE XII

## INVALIDATION OF LIENS AND DISCHARGE

All liens securing Claims which are not Allowed pursuant to the provisions of the Plan or Bankruptcy Code Sections 502 and 506 shall be invalidated and deemed null and void and of no further force and effect. The provisions of the confirmed Plan shall bind all Creditors and parties in interest, whether or not they accept the Plan and shall discharge the Debtor from all claims that arose prior to Confirmation. The distributions provide under the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims and Interests regarding any of the Debtor's assets or properties, including Claims arising after the date of filing of the Petition and prior to Confirmation. Unless otherwise specifically provided to the contrary herein or in the Confirmation Order, on or after Confirmation, all Holders of Claims or Interests

shall be precluded from asserting any Claim against the Debtor or his assets or properties. The Debtor shall be granted a discharge as provided in the Code.

## ARTICLE XIII

## REVESTING OF PROPERTY

Except as otherwise provided herein, property of the Debtor shall revest in the Reorganized Debtor on the Effective Date. Subsequent to the Effective Date, the Reorganized Debtor may buy, use, acquire, and dispose of property, free of any restrictions contained in the Bankruptcy Code.

## ARTICLE XIV

## UNITED STATES TRUSTEE'S FEES

The Debtor shall timely pay to the United States Trustee any and all pre- and post-confirmation quarterly fees as required by 28 U.S.C. § 1930(a)(6) until such time as this case is converted, dismissed or closed by the Court. Additionally, the Debtor shall timely submit to the United States Trustee pre- and post-confirmation Monthly Operating Reports in the format prescribed by the United States Trustee until such time as this case is converted, dismissed or closed by the Court.

## ARTICLE XV

## CONCLUSION

In order for the Bankruptcy Court to confirm the Plan, the Code requires, among other things, that the Plan be proposed in good faith; that the Debtor discloses specified information concerning payments or promises to insiders; that the Plan comply with the applicable provisions of Chapter 11 of the Bankruptcy Code; that, if there is one impaired Class of Creditors, at least

one impaired Class of Claims accepts the Plan; that Confirmation of the Plan is not likely to be followed by the need for further reorganization or liquidation of the Reorganized Debtor; that the Plan is in the best interest of each dissenting Creditor and that the Plan is fair and equitable to, and does not discriminate unfairly against, each non-accepting Class of impaired Claims. The Debtor believes that each requirement has been met, and the Debtor urges you to accept the Plan.

DATED, this, the 14th day of June, 2010.

Respectfully submitted,

NORTH MEADOW APARTMENTS, LLC

By Its Attorneys,
HARRIS JERNIGAN & GENO, PLLC

By _____
Craig M. Geno

OF COUNSEL:

Craig M. Geno, Esq.; MSB No. 4793
Jeffrey K. Tyree, Esq.; MSB No. 9049
Melanie T. Vardaman, Esq.; MSB No. 100392
HARRIS JERNIGAN & GENO, PLLC
587 Highland Colony Parkway (39157)
P. O. Box 3380
Ridgeland, MS 39158-3380
601-427-0048 - Telephone
601-427-0050 - Facsimile
F:\Users\Bankrupt\Vice, Tommy\North Meadow Apts Bkcy\D. Statement, Plan\Plan.wpd

## CERTIFICATE OF SERVICE

I, Craig M. Geno, do hereby certify that I have caused to be served this date, via Notice of Electronic Filing and/or U.S. Mail, postage prepaid, a true and correct copy of the above and foregoing instrument to the following:

Sammye S. Tharp, Esq.
Office of the United States Trustee
Sammye.S.Tharp@usdoj.gov

THIS the 14th day of June, 2010.

_____
Craig M. Geno